Filed 2/15/22  P. v. Gonzalez CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075824 |
| v. | (Super. Ct. No. RIF1803889) |
| JOSE CORDOVA GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  William R. Chidsey, Jr., Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## NTRODUCTION

Defendant and appellant, Jose Gonzalez sexually abused his step-granddaughter, B.C., for 10 years, beginning when B.C. was six years old. Defendant appeals from judgment entered following jury convictions for attempted sexual intercourse or sodomy of a child 10 years of age or younger (Pen. Code, §§ 664, 288.7, subd. (a)[1]; count 1); two felony counts of committing three or more sexual acts upon a child under the age of 14 years (§ 288.5; counts 2 & 3); aggravated sexual penetration of a child under 14 years (§§ 269, subd. (a)(5), 289, subd. (a); count 4); aggravated oral copulation of a child under 14 years (§§ 269, subd. (a)(4), 288a, subds. (c)(2), (c)(3); count 5); attempted oral copulation by force (§§ 664, 288a, subd. (c)(2)(A); count 6); and misdemeanor indecent exposure (§ 314, subd. (1); count 7). The court sentenced defendant to an aggregate term of 65 years and four months to life.

Defendant contends there was insufficient evidence of force, fear, or duress required to support his convictions for aggravated sexual penetration (count 4), aggravated oral copulation (count 5), and attempted oral copulation by force (count 6). Defendant also argues that the trial court abused its discretion by admitting evidence of

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code. Former section 288a (renumbered § 287 and amended by Stats. 2018, c. 423 (S.B.1494), § 49, eff. Jan. 1, 2019) applies here to defendant's charged crimes committed between 2014 and July 2018.

2

his prior uncharged sexual misconduct against his sister-in-law, O.P. We reject defendant's contentions and affirm the judgment.

## II.

## FACTS

Defendant is B.C.'s step-grandfather. He married B.C.'s maternal grandmother (MGM) shortly after B.C. was born in 2002. When B.C. was about six years old, she lived in a two-room apartment in Ontario, with her mother (Mother), her father, and her younger brother. Defendant and MGM also lived with them. Defendant and MGM took care of B.C. and her brother after school, while her parents worked late into the evening.

B.C. was six years old and in kindergarten when defendant first sexually abused her. While MGM was in the shower, defendant led B.C. to his bedroom, pulled down his pants and B.C.'s pants, took off the rest of B.C.'s clothes, placed her on his lap facing away from him, and pressed B.C.'s genitals against his. Defendant held her there as she attempted to wiggle off his lap. When defendant heard the shower turn off, he stopped, quickly dressed B.C., and told her to go play. This happened once or twice a week for two to three years while defendant lived with B.C. in the Ontario apartment. B.C. recalled that on one occasion during this time, defendant told her not to tell anyone about the abuse.

In 2010, when B.C. was eight years old and in the third grade, she moved to Riverside with her parents and brother. They lived with B.C.'s paternal grandparents and uncle for a year and one half. Defendant and MGM remained at the Ontario apartment

3

but continued to visit B.C. and her parents two or three times a month, during which defendant continued to sexually abuse her. During the family gatherings, defendant grabbed B.C.'s buttocks and breasts when he passed by. B.C. testified that he did it "all the time," and B.C. would push him away. Defendant also cornered her, pulled down his pants, and exposed his penis.

When B.C. was in the fourth or fifth grade, she and her family moved to another home in Riverside. About the same time, defendant and MGM moved to a home next to B.C.'s. Defendant sexually abused B.C. more frequently because her parents again left her in MGM and defendant's care, including overnight. During this time defendant made B.C. touch his genitals. B.C. would try to get away. Sometimes defendant would hold her hand and not allow her to pull it away. Defendant would also grab B.C.'s face and kiss her on the lips, and she would push him away. This conduct continued while B.C. was in the sixth and seventh grade. Defendant also showed B.C. pornography and prevented her from changing the channel.

B.C. testified she did not want to spend the night with defendant and MGM because she knew defendant would molest her. She did not tell anyone about the abuse because she feared that if she did, defendant would hurt her. B.C. testified that defendant did not hit her or expressly threaten her. Nevertheless, he scared her because she had observed him become somewhat aggressive and do "dumb things" when he drank a lot.

In the seventh grade, the sexual abuse escalated. Defendant digitally penetrated B.C.'s vagina twice. B.C. tried to push him off her. Defendant also pulled down her

4

pants and orally copulated her four or five times. Although B.C. feared defendant would harm her, several times when she was tired of the abuse, she aggressively tried to push him off her. During this period of time, defendant also exposed his penis and masturbated in front of B.C.

When B.C. was in 8th grade, she fought off defendant's attempts to have sex with her. While B.C. was at MGM and defendant's house, defendant pulled down her pants, bent her over, and tried unsuccessfully to insert his penis in her. B.C. tried to fight back. She would move away from defendant. B.C. did not tell anyone because she did not think anyone would believe her. B.C. testified she was scared of defendant and afraid he would hurt her if she told anyone about the sexual abuse. Defendant also attempted to force B.C. to perform fellatio on him by grabbing her head and pushing it toward his genitals. B.C. refused to put his penis in her mouth and shoved defendant away. This happened multiple times.

The sexual abuse ended when B.C. was in high school and she felt she had become strong enough to defend herself from defendant's advances. Even after the abuse stopped, B.C. did not tell anyone about the abuse until August 2018, because she did not want to ruin her relationship with her family. However, when B.C. and her family moved back in with defendant and MGM, B.C. began engaging in self-harm and expressing suicidal thoughts. She pleaded with Mother to move out. At about this time, Mother began noticing defendant committing bizarre and inappropriate behavior. On two occasions, while in the house, he exposed himself to Mother and he called her into his

5

closet while he was naked. Mother became suspicious of defendant. She asked B.C. if defendant had committed any inappropriate conduct directed towards her. B.C., who was 16 years old and a sophomore in high school, tearfully told Mother defendant had sexually abused her since she was six years old. Mother immediately took B.C. to O.P.'s house and called the police. B.C. testified that had Mother not questioned her about defendant, B.C. would not have reported the abuse because she felt old enough and strong enough to fight off defendant and she did not want to risk disrupting the family dynamic.

In August 2018, Detective Olivas of the Riverside Police Department Sexual Assault Child Abuse Unit interviewed B.C. and O.P. B.C. described prolonged abuse by defendant, which included digital penetration and oral copulation. B.C. also participated in a forensic examination. The normal test results were anticipated because of B.C.'s delayed reporting of the abuse and the rapid healing of the genital area, resulting in superficial wounds and exogenous DNA typically disappearing within 72 hours.

O.P. testified that on several occasions defendant had touched her buttocks and breasts when he had been drinking or when no one else was present. He also often looked at her "in an insinuating way," sucked on his finger, or stuck his tongue out and moved it around while looking at O.P. On one occasion, while O.P. was talking to MGM, defendant walked behind MGM and pulled down his shorts, exposing his penis to O.P. O.P. did not say anything to MGM because she thought it was unlikely MGM

6

would believe her. This incident occurred one or two months before Detective Olivas interviewed O.P. in August 2018.

Defendant's brother-in-law, M.G., testified that when he lived near defendant, defendant was like a second father to M.G.'s four sons. After defendant moved away, he and M.G. continued to stay in touch and see each other at family gatherings once a month. M.G. testified that defendant was a responsible and conscientious family man. M.G. sponsored defendant to become a U.S. citizen. M.G. believed the charges against defendant were not consistent with defendant's true good character.

Defendant's niece, R.G., testified defendant is her father's brother. Defendant lived with her family until she was almost 14 years old. He acted as a second father to her and her siblings. R.G. is still very close to defendant and sees him about every month at family events. R.G. testified defendant had never behaved inappropriately with her.

III.

SUFFICIENCY OF EVIDENCE

Defendant contends there was insufficient evidence to support findings that the sexual abuse offenses alleged in counts 4, 5, and 6 were accomplished by force, fear, or duress. We disagree.

"A court reviews the record for substantial evidence. [Citation.] The court examines the entire record and draws all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]

7

Although circumstances might also reasonably be reconciled with a contrary finding, it does not warrant reversal of the judgment. [Citation.] All intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that there is not sufficient evidence based upon any hypothesis whatsoever. [Citation.] Defendant bears an 'enormous burden.' [Citation.]" (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 (*Thomas*).)

A. *Aggravated Sexual Assault Crimes (Counts 4, 5 & 6)*

An aggravated sexual assault, as defined in section 269, subdivision (a), includes the charged crimes of oral copulation, attempted oral copulation by force, and sexual penetration upon a child. (§ 269, subd. (a)(4) & (5); § 288a, subds. (c)(2) & (c)(3)); § 289, subd. (a)); see CALCRIM No. 1123.) Convictions for these crimes require substantial evidence that the acts of oral copulation and sexual penetration were "accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim" or "by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat." (§ 288a, subd. (c)(2) & (3); § 289, subd. (a); see also CALCRIM Nos. 1045, 1015.)

On appeal, defendant does not dispute that the evidence was sufficient to support findings that he committed the charged acts of oral copulation, sexual penetration, and attempted oral copulation. However, he argues there was insufficient evidence that the offenses were committed by use of force, fear, or duress.

1. *Use of Force*

As applied to aggravated sexual assault crimes, "'[a] defendant uses "force" if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act.' [Citation.] 'The evidentiary key to whether an act was forcible is not whether the distinction between the "force" used to accomplish the prohibited act and the physical contact inherent in that act can be termed "substantial." Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act.' [Citation.] '[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves' are sufficient to support a finding that the lewd act was committed by means of force. [Citation.]" (*People v. Morales* (2018) 29 Cal.App.5th 471, 480.) The trial court instructed the jury that "[a]n act is accomplished by force if a person uses enough physical force to overcome the other person's will." (CALCRIM Nos. 1045, 1015.)

This court in *Thomas*, *supra*, 15 Cal.App.5th at page 1071, describes the term "force," as applied to aggravated sexual assault crimes, as including "circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude. [Citation.] It also includes the force used to accomplish 'the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act.' [Citation.]"

In *Thomas*, *supra*, 15 Cal.App.5th 1063, the defendant, who was the victim's father, was convicted of nine counts of aggravated sexual assault on a child. The defendant in *Thomas* sexually abused the victim for 10 years, beginning when she was four or five years old and living with both of her parents. The defendant continued to sexually abuse her when she spent weekends with the defendant after he and the victim's mother separated and later divorced. During this time, the defendant would hit the victim and yell at her. Because of the violent beatings, the victim feared telling anyone about the abuse, out of fear the defendant would beat her again. (*Id*. at p. 1067.) The *Thomas* defendant admitted he sexually abused the victim but on appeal argued there was insufficient evidence the offenses were aggravated sexual assault crimes committed by force, fear, menace, or duress. (*Id*. at p. 1066.)

We concluded in *Thomas* that, "reviewing the record in the light most favorable to the judgment, there was substantial evidence that defendant's physical abuse coerced Jane Doe into acquiescence" during the defendant's sexual abuse of her. (*Thomas*, *supra*, 15 Cal.App.5th at p. 1071.) With regard to the crime of sexual penetration, we explain in *Thomas* that there was sufficient evidence of force because "[a] reasonable jury could find that the sexual penetration was committed against Jane Doe's will and that defendant used *sufficient force to overcome her will* by leading her by the hand into the bathroom, positioning her body on the sink before digitally penetrating her." (*Id*. at p. 1072, italics added.)

10

In *People v. Morales*, *supra*, 29 Cal.App.5th at page 480, the court also held there was sufficient evidence of the use of force based on the victim's testimony that the defendant held her in such a manner that she could not move while he positioned her up against the trunk of a tree and penetrated her private parts with his finger. The *Morales* court stated that "[t]his testimony amply established that defendant used force to facilitate the lewd act, rather than merely incidentally touching Jane Doe 1 in the course of the lewd act." (*Id*. at p. 480.) The court concluded that the "defendant's 'grabbing, holding, and restraining' of Jane Doe 1 to facilitate his lewd act was substantial evidence of the requisite force." (*Ibid*.; *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 (*Alvarez*) ["acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" satisfied the force requirement.].)

(a) *Sexual Penetration by Force*

Here, there was sufficient evidence to support the jury's finding that when defendant committed the sexual penetration offense, he used force. B.C. testified that, while she was in the 7th and 8th grades, defendant inserted two fingers into her vagina on two separate occasions. In both instances, he put his hand down her pants and forced two fingers into her vagina. B.C. testified that it hurt her "really bad" because he pushed his fingers deep inside her. B.C. did not try to stop him, other than tell him it hurt and push him off her.

B.C.'s testimony that she resisted defendant by pushing him "off " of her was sufficient to establish that defendant was using force when committing sexual

11

penetration. In addition, B.C. testified defendant caused her to suffer extreme pain when he pushed two fingers deep into her vagina. The jury could have reasonably found that defendant used more force than was necessary to perform digital vaginal penetration against B.C.

(b) *Attempted Oral Copulation by Force*

There was also substantial evidence defendant used force when committing the offense of attempted oral copulation. Such evidence included B.C.'s testimony that she attempted to repel defendant's repeated attempts to force her to orally copulate him. B.C. testified that defendant would position his penis in front of her face and against her cheek, grab her hand, place her hand on his genitals, and grab her head and force it down towards his penis. These acts of grabbing, holding, and restraining B.C. when attempting to force her to orally copulate him were sufficient to support a finding of force. (*Alvarez*, *supra*, 178 Cal.App.4th at p. 1005.)

Citing *People v. Senior* (1992) 3 Cal.App.4th 765, 774 (*Senior*), defendant argues the facts in the instant case do not support a finding defendant used force. In *Senior*, the court held there was insufficient evidence the defendant committed oral copulation by using force because the only evidence of use of force was that the victim tried to pull away. The *Senior* court stated that, since ordinary oral copulation almost always involves "some physical contact other than genital, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force'" where there is no evidence of any struggle. (*Id*. at p. 774.)

12

The courts in *People v. Babcock* (1993) 14 Cal.App.4th 383, 388 (*Babcock*), and *People v. Neel* (1993) 19 Cal.App.4th 1784, 1790, rejected *Senior's* holding there was insufficient evidence of force. In *Babcock,* the defendant grabbed the victims' hands and forced the victims to touch his genitals. When one victim attempted to pull her hand away, defendant overcame her resistance. We agree with *Babcock* that the analyses in *Senior* was flawed by an "improper attempt to merge the lewd acts and the force by which they were accomplished *as a matter of law*." (*Babcock*, *supra*, at p. 388; see also *People v. Bolander* (1994) 23 Cal.App.4th 155, 163.)

Here, evidence that defendant grabbed B.C.'s hand, placed it on his genitals, grabbed her head, and forced her head down towards his penis was sufficient to support a finding that defendant used force when committing the offense of attempted oral copulation. Defendant argues there was insufficient evidence of force because, when B.C. resisted, defendant did not overpower her resistance. B.C. walked away from him without defendant forcing her to comply. But the evidence of defendant's use of force before B.C. resisted was sufficient to support a finding that defendant attempted to orally copulate B.C. using force beyond that needed to commit the act of oral copulation itself.

(c) *Oral Copulation by Force*

As to the oral copulation offense (count 5), we conclude there was insufficient evidence defendant used force. B.C. testified that defendant pulled down her pants to her knees and placed his mouth on her genitals on four or five separate occasions. This occurred within about the same time frame as the sexual penetration offenses, while she

13

was in the 7th and 8th grades.  B.C. testified that when defendant put his mouth on her genitalia, it was uncomfortable.  B.C. would try to push him away but, at times, she was afraid to stop him.  Other times she would get tired of defendant sexually abusing her.  She then would get aggressive and push him away.  B.C. testified she did not stop defendant from pulling down her pants because she was scared.  The oral copulation occurred at defendant's home while MGM was in the bathroom, sleeping, or outside in the garden.  B.C. feared that if she told MGM what was happening, defendant would deny it, lie, and blame B.C.  B.C. also testified that she was afraid defendant would hurt her but she did not say why she feared this.

Although there was evidence that on some occasions defendant used force when he committed sexual acts other than oral copulation, the evidence was insufficient to support a finding he used force when committing the charged oral copulation offense.  There was no evidence he used any force other than what was necessary to commit oral copulation.

When assessing whether defendant used force to commit oral copulation, the jury could consider B.C.'s resistance to his acts.  (*Babcock*, *supra*, 14 Cal.App.4th at p. 387.)  In *Babcock*, the court stated that, "[a]lthough resistance is not required to prove forcible sexual assault, the jury could reasonably have considered Rachel's resistance in assessing whether defendant used force to accomplish the lewd act."  (*Id*. at p. 387.)  The *Babcock* court added that "[w]hether a defendant used 'physical force substantially different from

14

or substantially in excess of that required for the lewd act' [citation] is properly left as an issue for the jury to resolve." (*Id*. at p. 388.)

In *Alvarez*, *supra*, 178 Cal.App.4th 999, the court held there was sufficient evidence to prove the defendant used force beyond that necessary to perpetrate the charged offenses of forcible lewd conduct and aggravated sexual assault against a nine-year-old child. (*Id*. at pp. 1002, 1004.) When the *Alvarez* defendant committed the first offense, the child resisted and attempted to push him away. He held her "hard" and "tight" when he inserted his finger into her vagina and refused to stop when the child asked him to. The child was unable to get away. The defendant made her grab his penis. When she let go, he grabbed her hand and held it around his penis. During a second incident, the defendant pulled the child on his lap and digitally penetrated her vagina. The child tried to fight him off and begged defendant to relent. Defendant refused. He took her hands, placed them on his penis, and forced her to "pull on it." The child tried to move her hands away but the defendant held them there. (*Id*. at pp. 1003, 1005.)

The court in *Alvarez* stated that, "[o]n this record, it is clear appellant applied physical force that was substantially different from that necessary to accomplish the lewd acts themselves. All that was necessary to commit this act was a lewd touching. The application of force here was substantially different, regardless of whether it was substantially greater. Accordingly, there is sufficient evidence to uphold his convictions for forcible lewd conduct and aggravated sexual assault." (*Alvarez, supra*, 178 Cal.App.4th at p. 1005.)

15

The court in *Senior* explained that "[t]he 'force' factor differentiates the charged sex crime from the ordinary sex crime. Since ordinary oral copulation and digital penetration almost always involve some physical contact other than genital, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force.'" (*Senior*, *supra,* 3 Cal.App.4th at p. 774.) But as discussed above, the courts in *Babcock*, *supra*, 14 Cal.App.4th at page 388, and *People v. Neel*, *supra*, 19 Cal.App.4th at page 1790, rejected *Senior's* holding that there was insufficient evidence of force because the *Senior* court merged the force necessary to accomplish the requisite elements of the crime of oral copulation with the use of additional force used to perform the offense. (*Babcock*, *supra*, 14 Cal.App.4th at p. 388.)

Here, there was no evidence that when defendant committed oral copulation, he used force different than that necessary to perpetrate the charged offense of oral copulation. (*Senior*, *supra*, 3 Cal.App.4th at p. 774; *Alvarez*, *supra*, 178 Cal.App.4th at pp. 1002, 1004.) There was also no evidence of any struggle or repression. There was evidence that, when defendant committed the oral copulation offenses, at times, B.C. would push him away. However, there was no evidence that defendant persisted or responded with force after B.C. pushed him away. Unlike in *Babcock* and *Alvarez*, there is no evidence defendant overcame B.C.'s resistance when she pushed defendant away.

2. *Duress and Fear*

Although there was insufficient evidence defendant used force when committing oral copulation, there was sufficient evidence defendant used duress. A showing of use

16

of any one of the factors of force, fear, or duress will suffice to establish the offense is an aggravated sexual offense. (§§ 287 (c)(2)(A); 288a, subds. (c)(2); 289, subd. (a); CALCRIM Nos. 1015, 1045.)

We recognize that "'[t]here is some overlap between what constitutes duress and what constitutes force. This is because duress is often associated with the use of physical force, which may, but need not be present to have duress. However, . . . the terms cannot be treated synonymously.'" (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 939.) "[D]uress involves psychological coercion. [Citation.] Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*Senior*, *supra*, 3 Cal.App.4th at p. 775.) But evidence of a pattern of physical abuse is unnecessary to establish duress. (*Id*. at p. 776.)

The trial court correctly instructed the jury on the offenses of aggravated sexual penetration, oral copulation, and attempted oral copulation that "to find defendant guilty by duress, it had to find beyond a reasonable doubt "a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do something that he or she would not otherwise do or submit to. When deciding whether the act was accomplished by duress, consider all the circumstances, *including the age of the other*

17

*person and her relationship to the defendant.*"  (CALCRIM Nos. 1015, 1045; *Thomas*, *supra*, 15 Cal.App.5th at p. 1072.)

We explained in *Thomas* that "[t]he totality of the circumstances includes the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child.  [Citations.]  The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress.  [Citation.]  When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases.  (See *People v. Veale* [(2008)] 160 Cal.App.4th [40,] 49 [seven-year-old victim], citing [*People v.*] *Cochran* [(2002) 103 Cal.App.4th 8,] 16, fn. 6 [nine-year-old victim].)"  (*Thomas*, *supra*, 15 Cal.App.5th at pp. 1072-1073.)

This is because a young child commonly views adults as authority figures, and the disparity in size between a child and an adult also contributes to the child's sense of physical vulnerability.  (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 51.)  Moreover, when the defendant is a family member, he can hold a special position of dominance and authority over a child, making the child especially susceptible.  (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)  If the defendant threatens the child with physical harm, punishment, restriction, or public embarrassment, the child may also feel coerced.  (*See Senior*, *supra*, 3 Cal.App.4th at pp. 775-776.)  An adult's use of physical control suggests

18

resistance will be answered with greater physical force. (*Id.* at p. 775.) B.C.'s testimony indicates she believed this was likely when defendant sexually assaulted her.

In *Thomas*, we concluded there was sufficient evidence that the defendant committed the sexual assault offenses by means of duress. We explained that the victim was between four and 14 years old and the defendant was her father. The sexual abuse occurred when they were alone at home. These circumstances are similar to those in the instant case, with the exception there were violent acts of intimidation in *Thomas*. In *Thomas*, we explained that "[t]he evidence demonstrates a vulnerable, isolated child who was compelled to participate in sex acts in response to parental authority and violent intimidation and not the result of freely given consent. Because of Jane Doe's young age at the time of the abuse and defendant's position of authority, she was particularly susceptible to being coerced." (*Thomas*, *supra*, 15 Cal.App.5th at p. 1073; see also *People v. Reyes* (1984) 153 Cal.App.3d 803, 811 [The trier of fact "could reasonably conclude that the use of 'told' by the witness infers an 'order,' not a request."].)

Although in the instant case there was no evidence that defendant beat B.C., B.C. testified she was afraid of the defendant and feared he would hurt her if she reported the abuse. B.C. testified that there were instances when she briefly resisted defendant's advances but, over 10 years of defendant sexually abusing her, she usually submitted to defendant's sexual abuse. As in *Thomas*, B.C. was between six and 16 years old and defendant was a close family member who was taking care of her. In addition, the sexual abuse occurred when B.C. was staying at defendant's home and while there was no one

19

else in the room. B.C. testified she was scared of defendant and feared he would hurt her if she reported the abuse. When she was little, defendant told her not to report the abuse, which B.C. could have reasonably construed as a threat not to do so.

Even assuming there was no evidence defendant expressly threatened B.C. with physical abuse or with other consequences, such as the breakup of the family, the jury could have reasonably found defendant conveyed a threat of harm if B.C. reported the abuse or resisted. "'An express or implied threat of harm does not require the use of a deadly weapon or an express verbal threat to do additional harm. Threats can be exhibited in a myriad number of ways, verbally and by conduct.' Even if defendant never expressly threatened Jane Doe, the jury was entitled to consider the totality of the evidence in assessing menace and had substantial evidence to conclude there was an implied threat that defendant would hurt Jane Doe if she resisted." (*Thomas*, *supra*, 15 Cal.App.5th at pp. 1073-1074, quoting *People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513.)

We concluded in *Thomas* that there was sufficient evidence of fear, as defined for the jury in CALCRIM Nos. 1045 and 1015 ["An act is accomplished by fear if the other person is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it"]. As we explained in *Thomas*, "Fear may be inferred from the circumstances despite contrary testimony from the victim. [Citation.] Threats may be inferred from conduct and even by silence. [Citation.] A

20

child's fear is magnified if the abuser is the victim's father. [Citation.]" (*Thomas*, *supra*, 15 Cal.App.5th at p. 1074.)

In the instant case, the jury could have reasonably found B.C. was fearful of defendant based on her testimony that when she was "little," defendant told her not to tell anyone about the sexual abuse. She also testified that, until she turned 16 years old, she feared defendant would hurt her if she reported the sexual abuse and if she resisted defendant sexually abusing her. The court in *Senior* noted that it was unlikely that young victims of sexual molestation readily perceive the subtle distinction between warnings enjoining nondisclosure and noncompliance. "A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*Senior*, *supra*, 3 Cal.App.4th at p. 775.)

B.C. further testified that although defendant never hurt her, hit her, or threatened her or anyone in her family, she "was scared of him. . . . [I]f I were ever to admit the truth, that he would hurt me." When asked why she was scared, B.C. testified she was scared of defendant because he would drink a lot, do "dumb things" when he drank, and "get somewhat aggressive." B.C. stated that, even though defendant never hurt her, hit her, or threatened her or anyone in her family, she was "still scared" and "afraid of him." "The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress." (*Thomas*, *supra*, 15 Cal.App.5th at p. 1072.)

Defendant argues that B.C.'s testimony that she was afraid of defendant is insufficient to support the requisite findings of fear and duress because there is no

21

evidence her fear was directly related to any of the incidents of abuse. But B.C.'s testimony regarding her fear of defendant demonstrated that she felt compelled to cooperate, submit to defendant's sexual abuse, and not tell anyone. In addition, B.C. testified that, until she felt capable of defending herself against defendant when she was 16 years old, she unwillingly submitted to defendant's sexual abuse because she feared defendant's response to her resisting or reporting his abuse. B.C. said she did not resist every instance of oral copulation because she feared defendant would hurt her if she did. It was not until high school that defendant could no longer sexually abuse her because she was too strong and could push him off of her. B.C. explained that when she was 16 years old, defendant's sexual abuse ended because she was finally strong enough to fight defendant off and defend herself against him. She had the strength to push defendant away and stand up for herself against him.

Citing *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*), defendant argues that C.B.'s subjective fear alone is insufficient to support a finding of duress. In *Espinoza*, the court held there was insufficient evidence of duress when the defendant committed five instances of sexual abuse upon his 12-year-old daughter, who had a limited intellectual level. (*Id*. at p. 1292.) The *Espinoza* court reasoned that the defendant did not grab, restrain or corner the victim, and the victim did not cry or resist while defendant lewdly touched her and attempted intercourse with her. (*Id*. at p. 1320.) The *Espinoza* court stated that psychological coercion without more does not establish duress. There must also be an implied threat of force, violence, danger, hardship or

retribution sufficient to coerce a reasonable person to "'"'(1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted."'"' (*Id.* at p. 1321.)  This is because all sex crimes with children are inherently coercive.  (*Ibid.*)  The *Espinoza* court added that, "[w]hile it was clear that [the victim] was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to continue to molest her." (*Id.* at p. 1321.)

Although the People do not address *Espinoza*, we note the language and reasoning in *Espinoza* has been questioned and undermined by subsequent decisions, such as *People v. Cochran*, *supra*, 103 Cal.App.4th at pages 14-16, and *People v. Veale*, *supra*, 160 Cal.App.4th at page 47.  *Espinoza* is based primarily on the statement in *People v. Hecker* (1990) 219 Cal.App.3d 1238, that "'[p]sychological coercion,'" without more, is insufficient to establish duress.  (*Espinoza*, *supra*, 95 Cal.App.4th at p. 1321, quoting *People v. Hecker*, *supra*, at p. 1250.)  However in *Cochran*, the court subsequently found this statement was "overly broad," clarifying that the "very nature of duress is psychological coercion."  (*People v. Cochran*, *supra*, at p. 15; see *People v. Veale*, *supra*, at p. 48 [distinguishing *Hecker* and *Espinoza* on the basis of *Cochran*].)  In addition, our Supreme Court later approved a definition of duress in child molestation cases more in line with *Cochran*, describing duress as "'us[ing] some form of psychological coercion to get someone else to do something.'"  (*People v. Soto* (2011) 51 Cal.4th 229, 243.)  We therefore agree with *Cochran* that a finding of duress does not necessarily require

23

something more than psychological coercion. We are thus not persuaded by *Espinoza's* analysis and holding that there was insufficient evidence of duress.

In addition, the instant case is distinguishable from *Espinoza*. Unlike in *Espinoza*, there was substantial evidence that defendant used fear and duress when committing the charged offenses of sexual penetration, oral copulation, and attempted oral copulation. There was evidence defendant had on occasion used force against B.C. when sexually abusing her over a period of 10 years; B.C. had resisted defendant's sexual abuse numerous times; B.C. had unwillingly submitted to defendant's advances and had made her unwillingness known when responding to defendant's advances and abuse; and she was aware of defendant's propensity to drink a lot, do "dumb things" when he drank, and "get somewhat aggressive." In addition, as B.C.'s step-grandfather, defendant exerted psychological dominance over B.C. as an adult familial authority figure and caretaker of B.C. at his home during much of the day and sometimes overnight. Evidence of other factors contributing to B.C.'s fear and duress include B.C.'s relative physical vulnerability because of her age and size relative to defendant; B.C.'s vulnerability when left alone in a room with defendant; defendant's continuous sexual exploitation of B.C. from the age of six years old until she was 16 years old; and defendant's directive when B.C. was young that she was not to tell anyone about the sexual abuse. (See *People v. Veale*, *supra*, 160 Cal.App.4th at pp. 46-50.)

Reviewing the record in the light most favorable to the judgment, we thus conclude there was substantial evidence defendant used force and or duress when

24

committing the charged offenses of aggravated sexual penetration, aggravated oral copulation, and attempted oral copulation by force (counts 4, 5, & 6).

IV.

## ADMISSIBILITY OF PRIOR ACTS EVIDENCE

## OF SEXUAL MISCONDUCT

Defendant contends the trial court prejudicially abused its discretion and violated his due process rights by admitting evidence of uncharged sexual acts under Evidence Code section 1108. We disagree.

A. *Procedural Background*

In addition to the charges of defendant sexually abusing B.C. (counts 1-6), defendant was charged with indecent exposure of his genitals in O.P.'s presence on about July 1, 2018 (§ 314, subd. (1); count 7). The prosecution filed a motion in limine (MIL) requesting admissibility of evidence under Evidence Code sections 1108 and 1101, subdivision (b), of defendant committing uncharged sexual acts directed at O.P. The MIL states that leading up to B.C.'s disclosure of sexual abuse, B.C.'s mother had observed several incidents in which defendant had exposed himself or been naked in front of Mother. Based on these incidents, Mother spoke to O.P. (sister of defendant's wife, MGM) about defendant. O.P. told Mother that defendant had made unwanted sexual advances towards her as well in the past. After speaking with O.P., Mother spoke with B.C., who disclosed that defendant had been sexually abusing her.

25

The trial court granted the prosecution's motion in limine (MIL) requesting admissibility of evidence of defendant committing uncharged sexual acts directed at O.P. The uncharged acts included incidents of defendant "groping" O.P. The prosecutor explained that O.P. did not report defendant's sexual misconduct sooner because she did not want to create a rift in the family. The prosecutor argued the evidence should be permitted under Evidence Code section 1108 because the prior uncharged conduct was not that dissimilar and it involved the same victim alleged in count 7. Also, presenting the evidence would not take a lot of time and it was relevant to show defendant had been inappropriately touching O.P. before he committed the charged offense of indecent exposure against O.P. The prosecutor noted that defendant's uncharged sexual misconduct directed at O.P. could not be charged because the one-year statute of limitations had run on the misdemeanor offenses.

Defense counsel objected to the evidence under Evidence Code section 352 on the ground its prejudicial effect outweighed any claimed probative value. Defense counsel argued that the uncharged acts were unreported, and were from years before. Defense counsel further argued that the evidence would not add anything probative and would make the jury think defendant was a bad person, when there was already enough evidence of that.

Upon granting the prosecution's MIL, the court concluded that the requested evidence of defendant's prior uncharged sexual acts would not be unduly prejudicial under Evidence Code section 352 because there would already be a great deal of

26

testimony about defendant's sexual conduct in connection with the charged offenses of defendant sexually abusing B.C. over 10 years and committing indecent exposure in O.P.'s presence.

During the trial, O.P. testified that "many times" over a period of more than 10 years defendant made her uncomfortable by looking at her "in an insinuating way," touching her buttocks when drunk, pretending to fall so he could touch her, and, on one occasion, groping her breast. He also made facial expressions and hand gestures having sexual connotations. Defense counsel objected to the testimony on the ground the MIL was limited to defendant touching O.P. and exposing himself to her. The court responded that O.P. could testify to her observations and conclusions as long as they were factual and relevant to showing defendant was a sexual predator. O.P. resumed her testimony, stating that defendant wagged his tongue at her, put his finger in his mouth and moved it around while looking at her, and pulled down his shorts to expose himself while he stood behind his wife whom O.P. was facing. O.P. testified she never told her sister (MGM) about the incidents because MGM trusted defendant and O.P. did not think MGM would believe her.

B. *Applicable Law*

"Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type and essentially permits such evidence to be used in determining whether the defendant is guilty of a current sexual

27

offense charge. (Evid. Code, § 1108, subd. (a).) . . . [Evidence Code section 1108's] enactment created a statutory exception to the rule against the use of propensity evidence, allowing admission of evidence of other sexual offenses in cases charging such conduct to prove the defendant's disposition to commit the charged offense. [Citation.]" (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1103-1104 (*Dejourney*).)

When weighing the prejudice of such Evidence Code section 1108 evidence against its probative value under Evidence Code section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other . . . offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 917; accord, *Dejourney*, *supra*, 192 Cal.App.4th at p. 1104; see also *People v. Yovanov* (1999) 69 Cal.App.4th 392, 404 ["the precise probative value to be accorded this evidence will depend on various considerations, such as the frequency of the uncharged acts and their similarity and temporal proximity to the charged acts."].) When evaluating such evidence, the court must determine "whether '[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory

than the testimony concerning the charged offenses.'" (*People v. Harris* (1998) 60 Cal.App.4th 727, 738; accord, *Dejourney*, *supra*, 192 Cal.App.4th at p. 1104.)

"The determination as to whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is 'entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.' [Citation.] The weighing process under [Evidence Code] section 352 'depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules.' [Citation.]" (*Dejourney*, *supra*, 192 Cal.App.4th at pp. 1104-1105.) Prejudicial evidence under Evidence Code section 352 is "evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.'" [Citation.]' [Citation.]" (*Ibid*.)

We apply the abuse of discretion standard of review when determining whether the trial court erred in admitting other acts or crimes evidence under Evidence Code section 1108. (*People v. Kipp* (1998) 18 Cal.4th 349, 371; *Dejourney*, *supra*, 192 Cal.App.4th at p. 1104.) "We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling '"falls outside the bounds of reason." [Citation.]' [Citation.] In other words, we will disturb a trial court's ruling under Evidence Code section 352 only where the court has exercised its discretion in a manner that resulted in a miscarriage of justice." (*Dejourney*, *supra*, at p. 1104.)

C. *Analysis*

Defendant argues the trial court abused its discretion in allowing evidence of defendant's prior uncharged sexual misconduct because the misconduct was not sufficiently similar to the charged offenses to be probative and was misleading. Also, the misconduct was remote and unduly prejudicial. We disagree.

The evidence of defendant's acts of prior sexual misconduct is the type of evidence anticipated by the Legislature in enacting Evidence Code section 1108. The evidence was not any more inflammatory than the evidence of the conduct for which defendant was currently on trial. Although O.P. testified some of the prior uncharged incidents might have occurred 10 or more years before, the evidence was nevertheless probative because the charged sexual abuse of B.C. covered a 10-year period and there was no evidence that any of the prior uncharged acts O.P. mentioned actually occurred more than 10 years before. Any evidence of sexual misconduct during the period of time defendant abused B.C. was relevant and probative as to defendant's propensity to commit the charged sexual offenses. The evidence was not merely cumulative and was directly relevant to count 7, in which defendant was charged with exposing himself to O.P. The evidence revealed defendant had a history of continuous sexual misconduct against female family members, and also demonstrated that he had a propensity to commit sex crimes against adult women, as well as against young girls. In addition, the evidence related to the charged offenses, but was also sufficiently different such that it was unlikely the evidence would confuse, mislead, or distract the jurors.

30

Under such circumstances, we conclude the trial court did not abuse its discretion in weighing the evidence under Evidence Code section 352 and admitting it under Evidence Code section 1108.  Because the probative value of the uncharged sexual misconduct evidence substantially outweighed the possibility of undue consumption of time presenting it, unfair prejudice, or misleading the jury, there was no abuse of discretion in allowing it.

## V.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.